■ JOSEPH LAMONTAGNE, Appellant, v BOARD OF TRUSTEES OF THE UNITED WIRE, METAL AND MACHINE PENSION FUND, Respondent.—Order, Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered November 29, 1990, which granted defendant's motion for summary judgment and denied plaintiff's cross motion for an order prohibiting defendant from filing reply papers, and judgment of said court and Justice entered on January 11, 1991, dismissing the complaint and awarding defendant costs and disbursements, unanimously affirmed, without costs.

Plaintiff, a former participant of defendant, was covered by a pension plan, a copy of which he admits having received in 1978. Under that plan, a break in employment results in cancellation of all previously accrued pension credits if an employee fails to work at least 800 hours in covered employment within any two consecutive calendar years, although a "grace period" to a maximum of eight quarters will be allowed in the sole and absolute discretion of defendant Pension Fund for total disability. Plaintiff left covered employment in 1971 and did not return. Responding to a 1978 application, defendant sent to plaintiff a 1978 letter advising him that he was denied a pension due to a five-year break in service. Plaintiff applied for a different class of pension in 1986. His counsel was advised by 1986 letter from defendant that the Board of Trustees of defendant Pension Fund had determined in 1978 that a break in service occurred five years before the 1978 letter, and that plaintiff was not a participant or beneficiary in the Pension Fund.

In 1986, plaintiff commenced a Federal action claiming a violation of the pension plan itself, two provisions of the Employee Retirement Income Security Act, or "ERISA" (29

USC § 1104 [a]; § 1053), and a provision of the Taft-Hartley Act (29 USC § 186 [c] [5]), which action was unsuccessful *(Lamontagne v Pension Plan of United Wire, Metal & Mach. Pension Fund,* 1988 WL 78319 [SD NY], *affd* 869 F2d 153, *cert denied* 493 US 818). The District Court Judge acknowledged plaintiff's argument that his break in employment should be construed as having occurred on January 1, 1975, on the ground that he was entitled to a grace period because he was totally disabled. The Second Circuit, affirming, noted that even if plaintiff had applied to have his absence from covered employment recognized as a grace period in 1986, it "would have no bearing on whether the Fund's 1978 denial of his pension application was inexorable." (869 F2d, *supra,* at 156.) Further, the Second Circuit concluded that plaintiff's break in employment occurred in 1976, whereupon all of his pension credits were cancelled and "he had no right to a pension" *(supra,* at 157), such that defendant Pension Fund "clearly repudiated Lamontagne's pension application in 1978" *(supra,* at 157), and "that he was ineligible for any type of pension" *(supra,* at 158).

After the United States Supreme Court denied certiorari, plaintiff commenced the instant State action, alleging background facts substantially similar to those alleged in his Federal complaint, and pleading eight causes of action arising from a central premise that the 1986 denial of a pension or a grace period was a violation of defendant's common law fiduciary duties. After raising affirmative defenses including res judicata, collateral estoppel and a six-year Statute of Limitations, defendant moved for summary judgment, which the IAS court granted.

Generally, under a transactional analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" *(O'Brien v City of Syracuse,* 54 NY2d 353, 357). Nevertheless, in *McLearn v Cowen & Co.* (60 NY2d 686), the Court of Appeals held that a Federal action does not have res judicata effect on a State action where it was clear that the pretrial dismissal of Federal causes of action did not include adjudication of a pendent State claim on its merits. As this court has noted, whether this is because the Federal court lacks jurisdiction over pendent State claims once it dismisses a Federal claim prior to trial *(see, McLearn v Cowen & Co.,* 660 F2d 845, 848), or because the Federal court is presumed to have declined to exercise its discretionary pendent jurisdiction

over the State law claims *(supra,* at 851 [Lasker, J., concurring]), the result is the same as long as there is no clear indication by the Federal court that there was a dismissal of the State claim on the merits *(Evans v Rothschild, Unterberg, Towbin,* 131 AD2d 278, 282-283). The rule in New York is that a dismissal of a pendent State action by a Federal court is presumed to be not on the merits absent a clear indication to the contrary *(see, e.g., Creative Bath Prods. v Connecticut Gen. Life Ins. Co.,* 173 AD2d 400). Since plaintiff's Federal complaint does not adequately present a recognizable State claim *(Evans v Rothschild, Unterberg, Towbin,* 131 AD2d, *supra,* at 283), and since there was no indication by the Federal court in *Lamontagne (supra),* that it intended to dismiss any implicit State claims on the merits, the Federal court decision in *Lamontagne* can have no res judicata effect on the instant action.

The doctrine of collateral estoppel is a broad doctrine presenting general questions of fairness with few immutable rules *(Boorman v Deutsch,* 152 AD2d 48, 53, *lv dismissed* 76 NY2d 889). It requires that the party to be precluded from relitigating an issue have had a full and fair opportunity to contest the prior determination, and that the identical issues were necessarily decided in the prior action and are decisive in the present action *(People v Trans World Airlines,* 171 AD2d 76). The issue must have been actually litigated in the prior action; that is, it must have been "properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *(Matter of Halyalkar v Board of Regents,* 72 NY2d 261, 268.) Although the District Judge in *Lamontagne (supra)* did deal with plaintiff's argument that his disability entitled him to a grace period as a matter of law, the better view is that the problems of Federal jurisdiction over pendent State claims, and the general fairness that underlies collateral estoppel, lead to the conclusion that the Federal *Lamontagne* determinations should not be said to have collateral estoppel effect on the ultimate legal issues on the State action.

Nevertheless, plaintiff did have a full and fair opportunity to litigate in the Federal court whether or not there occurred in 1978 a clear repudiation of his pension rights that would commence the run of the conceded six-year Statute of Limitations for breach of fiduciary duty *(see, Matter of Barabash,* 31 NY2d 76, *rearg denied* 31 NY2d 963). The question of *Barabash* repudiation is regularly considered by Federal courts *(see, e.g., Larsen v NMU Pension Trust,* 902 F2d 1069, 1073)

and the Second Circuit in *Lamontagne* explicitly held that defendant Pension Fund clearly repudiated plaintiff's right to any type of pension in 1978 (869 F2d, *supra,* at 157-158). Accordingly, plaintiff's State action is time-barred, and was properly dismissed.

We have reviewed plaintiff's arguments that the run of the six-year Statute of Limitations began in 1986 pursuant to CPLR 206 (a) (1), and that defendant should be equitably estopped from asserting the Statute of Limitations as a defense, and find them to be without merit.

Accordingly, we do not reach the argument raised by defendants for the first time on appeal that plaintiff's State action lacks substantive merit as a matter of law, and we note, in any event, that the argument might have been factually countered by plaintiff had it been raised before the IAS court *(Sega v State of New York,* 60 NY2d 183, 190, n 2, *rearg denied sub nom. Cutway v State of New York,* 61 NY2d 670). Were we to consider this argument, we would find it to be without merit. Concur—Sullivan, J. P., Kupferman, Ross, Smith and Rubin, JJ.